**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

MARK MAURER, et al.,

Plaintiffs,

v.

EDWARD D. JONES & CO., L.P., et al.,

Defendants.

Case No. 4:26-cv-01294-MAL

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS


INTRODUCTION ........................................................................................................1

BACKGROUND ........................................................................................................1

ARGUMENT ............................................................................................................3

I. Plaintiffs Lack Article III Standing..................................................................3

II. The CCAC Should Be Dismissed for Failure to State a Claim. ..........................4

A. Plaintiffs Fail to State a Claim under CIPA and ECPA. ..................................5

B. Plaintiffs Fail to State a Claim for Invasion of Privacy. ..................................11

C. Plaintiffs Lack Statutory Standing Under the UCL and CDAFA. .......................12

D. Plaintiffs Fail to State a Viable Negligence Claim. .......................................13

E. Plaintiffs' Unjust Enrichment Claim Fails. ...................................................14

F. Plaintiffs Are Not Entitled to Equitable Relief. ............................................14

G. Plaintiff Shah's Claims Should Be Dismissed Because He Voluntarily Dismissed Them with Prejudice. ..........................................................................15

CONCLUSION .........................................................................................................15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069 (8th Cir. 2017) ....................15

*Apple Inc. v. Superior Ct.*, 292 P.3d 883 (Cal. 2013) ....................10

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ....................4

*Aziz v. Allstate Ins. Co.*, No. 4:14-CV-934-CEJ, 2015 WL 13688049 (E.D. Mo. Feb. 27, 2015) ....................14

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................4

*Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084 (C.D. Cal. 2017) ....................13

*City of L.A. v. Lyons*, 461 U.S. 95 (1983) ....................4

*Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000 (N.D. Cal. 2018) ....................5

*Concha v. London*, 62 F.3d 1493 (9th Cir. 1995) ....................15

*Esparza v. Gen. Digit. Inc.*, 2024 WL 655986 (C.D. Cal. Jan. 2024) ....................6

*Forouzesh v. Starbucks Corp.*, No. CV 16-3830 PA, 2016 WL 4443203 (C.D. Cal. Aug. 19, 2016) ....................14

*Frost v. Sioux City*, *Iowa*, 920 F.3d 1158 (8th Cir. 2019) ....................3, 4

*Hammerling v. Google LLC*, 2022 WL 17365255 (N.D. Cal. Dec. 1, 2022) ....................6

*Hazel v. Prudential Fin., Inc.*, No. 22-CV-07465-CRB, 2023 WL 3933073 (N.D. Cal. June 9, 2023) ....................12, 13

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) ....................11, 12

*Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) ....................11

*In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836 (N.D. Cal. 2017) ....................11

*In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd,* 572 F. App'x 494 (9th Cir. 2014) ....................13

*In re iPhone App. Litig.*, 844 F. Supp. 2d at 1064 ....................14

*In re SuperValu, Inc.*, 870 F.3d 763 (8th Cir. 2017) ....................4

*In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....5

*In re Zynga Privacy Litig.*, 750 F.3d 1098 (9th Cir. 2014)....6

*Ingraham v. Capital One*, Case No. 3:24-cv-05985-TLT-SK (N.D. Cal. 2024)....15

*J'Aire v. Gregory*, 24 Cal.3d 799 (1979)....13

*Jones v. Bloomingdales.com, LLC*, 124 F.4th 535 (8th Cir. 2024)....3

*Jurgens v. Build.com, Inc.,* No. 4:17–CV–00783–AGF, 2017 WL 5277679, *5-6 (E.D. Mo. Nov. 13, 2017)....7

*Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) ....6

*Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726 (N.D. Cal. June 24, 2025), *appeal dismissed*, No. 25-4452, 2025 WL 2943080 (9th Cir. Oct. 3, 2025)....11

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) ....5

*Krottner v. Starbucks Corp.*, 406 F. App'x 129 (9th Cir. 2010)....14

*Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096 (C.D. Cal. 2023) ....5

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012)....11, 13

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....3

*May v. Makita U.S.A., Inc.*, No. 1:22-CV-79-SNLJ, 2023 WL 3619354 (E.D. Mo. May 24, 2023)....4

*Med. Lab'y Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806 (9th Cir. 2002) ....12

*Mitchener v. CuriousityStream,* No. 25-CV-01471-NW, 2025 WL 2272413, at *4 (N.D. Cal. Aug. 6, 2025)....10

*Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) ....8

*Nemaizer v. Baker*, 793 F.2d 58 (2d Cir. 1986)....15

*Nguyen v. Raymond James & Associates, Inc.*, Case No. 8:20-cv-195-CEH-AAS, 2022 WL 17811068 (M.D. Fl. Dec. 19, 2022) ....4

*People v. Nakai*, 183 Cal. App. 4th 499 (2010)....9

*Porters Bldg. Ctrs., Inc. v. Sprint Lumber*, No. 16-06055-CV-SJ-ODS, 2017 WL 4413288 (W.D. Mo. Oct. 2, 2017) ..... 7

*Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613 (9th Cir. 2021) ..... 14

*Rodriguez v. Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ..... 8, 9

*Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194 (Cal.Super. Jan. 27, 2025) ..... 10

*Sepanossian v. Nat'l Ready Mix Co., Inc.*, 97 Cal. App. 5th 192 (2023) ..... 14

*Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) ..... 12, 13, 14

*Smith v. LoanMe, Inc.*, 11 Cal. 5th 183 (2021) ..... 10

*Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958 (8th Cir. 2005) ..... 14

*Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140 (S.D. Cal. May 8, 2024) ..... 11

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ..... 3

*United States v. Hoeffener*, No. 4:16-CR-374 JAR/PLC, 2018 WL 2996317, at *12 (E.D. Mo. May 9, 2018) ..... 7

*Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043 (N.D. Cal. 2018) ..... 12

*Yale v. Clicktale, Inc.*, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ..... 6

**Statutes and Constitutional Provisions**

18 U.S.C. § 2510(8) ..... 7

18 U.S.C. § 2511(1)(a) ..... 5

CIPA § 1798.120 ..... 10

CIPA § 1798.140(v)(1)(F) ..... 10

CIPA § 631 ..... 1, 5, 6

CIPA § 631(a) ..... 5

CIPA § 632 ..... 1, 8, 9

CIPA § 632(a) ..... 8

CIPA § 632(c) ........ 8

CIPA § 638 ........ 10

CIPA § 638.50 ........ 9

CIPA § 638.50(b) ........ 9

CIPA § 638.51 ........ 9, 10

CIPA § 638.51(a) ........ 9

CIPA § 638.51(a) ........ 10

CIPA § 638.52 ........ 10

CIPA § 638.52(d)(1), (3) ........ 10

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6) ........ 4

Fed. R. Civ. P. 41(a)(1) ........ 15

FINRA Rule 2268(f) ........ 4

FINRA Rule 12204(d) ........ 4

**<u>Other Authorities</u>**

California Constitution ........ 11

Edward Jones website, www.edwardjones.com ........ 1

Federal Pen Register Act ........ 10

Federal Wiretap Act ........ 5

## INTRODUCTION

Plaintiffs Theresa Stevens, Dennis Frasher, and Vishal Shah (collectively, "Plaintiffs") allege that Defendants Edward D. Jones & Co., L.P. ("Edward Jones") and The Jones Financial Companies, L.L.L.P. (collectively, "Defendants") violated federal and California data privacy statutes and common law by incorporating third-party software technologies on the Edward Jones website, www.edwardjones.com ("Website"), including the client Online Access portal ("Online Access"). Plaintiffs' Consolidated Class Action Complaint ("CCAC") suffers from multiple defects that require its dismissal.

*First*, Plaintiffs lack Article III standing because they fail to plead alleged facts particular to their experiences, and they cannot show any risk of future injury. *Second*, each of Plaintiffs' ten causes of action fails to state a claim. The CCAC does not plausibly allege an in-transit interception of communication contents as required by CIPA § 631 and ECPA; Plaintiffs do not allege the use of any tangible recording device or confidential communication as required by CIPA § 632; Plaintiffs' pen register and trap-and-trace claims are not tethered to any applicable statutory framework covering internet activity; and the remaining common law and statutory claims fail for lack of the requisite degree of alleged offensive conduct, cognizable economic harm, or any viable legal theory. *Third*, Plaintiff Shah's claims are independently barred by his prior voluntary dismissal with prejudice. Accordingly, the Court should dismiss the CCAC.

## BACKGROUND

Defendants operate and manage multiple web properties as part of their business, including the Website and Online Access, through which clients can view their account information. *Id.* ¶ 70. Online Access is accessible only to customers who authenticate with a User ID and password. *Id.* ¶ 71. Plaintiffs allege that Defendants made unauthorized disclosures of customers' and

prospective customers' private data—including personally identifiable information ("PII") such as account information, portfolio holdings, and transaction history—via software of third parties, namely, Google LLC, Meta Platforms, Inc., The Trade Desk, Inc., LinkedIn Corporation, and Contentsquare Israel Ltd. *Id.* ¶ 1.

Plaintiff Shah, who is not alleged to be an Edward Jones customer, alleges that during a single visit to the Website in October 2025,[1] he used an advisor-matching quiz and that his PII and responses to survey questions were intercepted and disclosed to third parties. *Id.* ¶ 45-46. Plaintiffs claim Defendants incorporated third-party software on the Website and Online Access to serve targeted advertisements and, consequently, to "make more money." *Id.* ¶ 50. Based on these allegations, Plaintiffs bring ten causes of action under federal wiretap law, California privacy statutes, and common law and equitable theories. *Id.* ¶¶ 190-312.

Former single Plaintiff Mark Maurer, a New York resident who never maintained an Edward Jones account, originally filed this action in the Northern District of California and later amended the complaint to add Theresa Stevens, Richard Mortensen, Chris Wall, and Dennis Frasher. Dkt. 1, 16. Plaintiff Shah separately filed a putative class action in the Central District of California, Dkt. 23-1, Ex. A, which he voluntarily dismissed with prejudice before filing an identical action in the Northern District of California. *Id.*, Exs. B, C. The two actions were subsequently consolidated. Dkt. 46. In connection with the filing of the CCAC, Messrs. Maurer, Mortensen, and Wall voluntarily dismissed their claims, leaving Plaintiffs Stevens, Frasher, and Shah as the remaining named Plaintiffs. Dkt. 47. Defendants subsequently moved to dismiss the

[1] This single Website visit is the entirety of Plaintiff Shah's alleged connection to Defendants – and, notably, the same visit that formed the basis of his prior putative class action filed in the Central District of California, which he voluntarily dismissed with prejudice, but now reasserts here.

CCAC on the grounds set forth below. Dkt. 50. Defendants concurrently moved to transfer venue to this District based on the mandatory forum selection and choice-of-law clauses in Plaintiffs Stevens' and Frashers' account agreements with Defendants. Dkt. 49. On August 11, 2026, the Northern District of California granted transfer to this District on convenience and fairness grounds and terminated the motion to dismiss without prejudice to renewal in this Court. Dkt. 61.

## ARGUMENT

### I. Plaintiffs Lack Article III Standing.

Plaintiffs bear the burden of establishing Article III standing, including a concrete and particularized injury and, for prospective relief, a real and immediate threat of future injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-62 (1992); *Frost v. Sioux City*, *Iowa*, 920 F.3d 1158, 1161-62 (8th Cir. 2019). Plaintiffs' CCAC fails to satisfy this burden for at least two reasons.

***First***, Plaintiffs fail to allege a concrete and particularized injury specific to any Plaintiff. The "named plaintiffs who represent a class must allege and show that they personally have been injured," *Friends of the Earth*, 528 U.S. at 180, and "[o]nly those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (emphasis in original). Under *Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 539 (8th Cir. 2024), a plaintiff alleging injury from third party software code must plead "what [the] code actually captured, not what [the] code is capable of capturing."

Although the CCAC generally and at length alleges how Plaintiffs believe third-party software functions on the Website (CCAC (Dkt. 47) ¶¶ 75-119), it does not connect those allegations to any specific information associated with or putative injury to any Plaintiff, such as which challenged software technology intercepted which Plaintiff's online interaction, the particular online visit when the interception occurred, what information was intercepted or

transmitted, to whom it was transmitted, or how the transmission injured the Plaintiff. Instead, Plaintiffs Stevens and Frasher allege that Defendants disclosed an undefined "full transaction history to Google," while Plaintiff Shah alleges disclosure of "PII and answers to survey questions." *Id.* ¶¶ 30, 38, 46. Such allegations do not meet Plaintiffs' burden to plead facts showing injury arising from the collection and disclosure of information associated with each Plaintiff. *See In re SuperValu, Inc.*, 870 F.3d 763, 773 (8th Cir. 2017).

***Second***, Plaintiffs lack standing to pursue injunctive and declaratory relief because they cannot show "a sufficient likelihood that [they] will again be wronged in a similar way." *City of L.A. v. Lyons*, 461 U.S. 95, 111 (1983) (injunctive relief); *see Frost*, 920 F.3d at 1161-62 (same for declaratory relief). Having filed this lawsuit, Plaintiffs are now fully aware of the practices they challenge and cannot plausibly allege that they will "again be wronged in a similar way." *Lyons*, 461 U.S. at 111; *see also May v. Makita U.S.A., Inc.*, No. 1:22-CV-79-SNLJ, 2023 WL 3619354, at *3 (E.D. Mo. May 24, 2023).

## II. The CCAC Should Be Dismissed for Failure to State a Claim.

Rule 12(b)(6) requires non-conclusory factual allegations that, if true, plausibly support a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Plaintiffs' pleaded claims do not meet that standard.[2]

---

[2] Solely for purposes of this motion, Defendants assume the California law invoked in the CCAC applies to Plaintiffs' claims. Defendants reserve all rights to challenge that premise, including under the choice-of-law provisions in Plaintiffs Stevens' and Frashers' account agreements. Dkt. 49-1, Exs. 1, 2. Defendants further reserve the right to compel arbitration of the individual claims of Plaintiffs Stevens and Frasher at the appropriate juncture, pursuant to the arbitration provisions in their account agreements. *See Nguyen v. Raymond James & Associates, Inc.*, Case No. 8:20-cv-195-CEH-AAS, 2022 WL 17811068, *5 (M.D. Fl. Dec. 19, 2022) (granting defendant's motion to compel arbitration following order resolving putative class claims) (citing FINRA Rule 2268(f)); *see also* FINRA Rule 12204(d).

### A. Plaintiffs Fail to State a Claim under CIPA and ECPA.

#### 1. Plaintiffs' CIPA § 631 and ECPA Claims Are Deficient.

CIPA § 631 prohibits willfully reading or attempting to read any communication "while the same is in transit" without the consent of all parties, and aiding or conspiring to do so. Cal. Penal Code § 631(a). The ECPA, in turn, prohibits the interception of the contents of an electronic communication through the use of a device. 18 U.S.C. § 2511(1)(a). Plaintiffs assert violations of CIPA § 631 and the ECPA on the same theory, that Defendants "aided, employed, agreed with, conspired with, and procured third parties[']" interception of their communications. CCAC ¶¶ 194, 212. Both claims fail for the same reasons.[3]

**The CIPA § 631 Claim.** Plaintiffs' CIPA § 631 claim fails for two independent reasons. ***First***, Plaintiffs do not plausibly allege that any third party read, or attempted to read, a communication "in transit." "Courts in the Ninth Circuit have interpreted the in transit requirement narrowly," *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1109 (C.D. Cal. 2023), as requiring "acquisition contemporaneous with transmission," *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Conclusory allegations that interception occurred "contemporaneously," "during transmission," or "in real time" do not suffice. *See In re Vizio, Inc. Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1226, 1228 (C.D. Cal. 2017).

The CCAC offers only those conclusory allegations. Plaintiffs allege that third-party software technologies "transmit a website user's actions and communications contemporaneously as the user initiates each communication," and that communications were intercepted "before reaching Edward Jones's server." CCAC ¶¶ 200, 216. But Plaintiffs rely on generalized, website-

[3] Courts routinely analyze violations of CIPA § 631 and the ECPA together because "analysis for a violation of CIPA is the same as that under the federal Wiretap Act." *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018) (citation omitted).

and portal-wide descriptions of how third-party software allegedly operates, coupled with formulaic assertions that communications were "automatically," "contemporaneously," or "simultaneously" intercepted "in real time." *Id.* ¶¶ 83, 199, 202, 215-16. That is precisely the kind of conclusory recitation of statutory language that courts have found insufficient. *See, e.g., Esparza v. Gen. Digit. Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 2024).

Plaintiffs' own allegations reinforce the defect. The CCAC repeatedly characterizes Defendants' conduct as "disclosure" of Plaintiffs' information to third parties, not third-party interception at transmission. CCAC ¶¶ 1, 11, 72, 203, 218. Plaintiffs also allege that Defendants control "what information is traced and transmitted" and "how events are categorized *prior* to their transmission," *id.* ¶¶ 197, 214 (emphasis added)–a post-receipt, pre-transmission-to-third-party sequence inconsistent with real-time interception in transit. *See Hammerling v. Google LLC*, 2022 WL 17365255, at *10 (N.D. Cal. Dec. 1, 2022).

***Second***, Plaintiffs fail to allege the interception of "contents." CIPA § 631 requires interception of "contents" of a communication—*i.e.*, "the intended message conveyed by the communication," not "[r]ecord information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). The crux of the CCAC is the alleged capture of page URLs, user actions, "page view" events, IP addresses, cookie values, and user and device identifiers, CCAC ¶¶ 77-119, 123-148, which are precisely the type of non-substantive record information that falls outside both statutes' reach. *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 n.9 (N.D. Cal. 2023) (finding "webpage titles, webpage keywords, the date and times of website visits, IP addresses, [and] page visits" are not content information); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *1, *3 (N.D. Cal. Apr. 15, 2021) (same).

**The ECPA Claim.** Plaintiffs' ECPA claim collapses for the same reasons. Courts within the Eighth Circuit have held that an "interception" requires acquisition of a communication contemporaneous with its transmission. *Porters Bldg. Ctrs., Inc. v. Sprint Lumber*, No. 16-06055-CV-SJ-ODS, 2017 WL 4413288, at *8-9 (W.D. Mo. Oct. 2, 2017). This includes *Jurgens v. Build.com, Inc.*, which dismissed ECPA claims based on a website operator's alleged acquisition of a visitor's data because the acquisition occurred only after the data had already reached its point of collection. No. 4:17–CV–00783–AGF, 2017 WL 5277679, *5-6 (E.D. Mo. Nov. 13, 2017).

Here, the CCAC rests on labels—"contemporaneously," "during transmission," and "in real time"—rather than allegations identifying a communication captured while in transmission. CCAC ¶¶ 83, 199-202, 215-16. Its operative allegations instead describe Defendants' collection, categorization, and subsequent transmission of information, *id.* ¶¶ 197, 214, and repeatedly characterize that conduct as "disclosure" to third parties rather than interception of a communication before it reached Defendants at all. *Id.* ¶¶ 1, 11, 72, 203, 218. Because Plaintiffs' own allegations place the challenged conduct after the communication was received, the CCAC fails to plausibly allege the contemporaneous interception that the ECPA requires.

Plaintiffs also do not plausibly allege interception of "contents," defined by statute to include "any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8). As noted above, the CCAC relies on the alleged capture of page URLs, user actions, "page view" events, IP addresses, cookie values, and user and device identifiers, CCAC ¶¶ 77-119, 123-148, which are the type of non-substantive record information that falls outside the ECPA's reach. *See United States v. Hoeffener*, No. 4:16-CR-374 JAR/PLC, 2018 WL 2996317, at *12 (E.D. Mo. May 9, 2018), *report and recommendation adopted*, No. 4:16-CR-374 JAR, 2018 WL 2981426 (E.D. Mo. June 13, 2018), *aff'd*, 950 F.3d 1037 (8th Cir. 2020).

Plaintiffs cannot invoke the ECPA's crime-tort exception, which applies only where the defendant's purpose was to commit a criminal or tortious act "*independent* of the intentional act of recording." *Jurgens*, 2017 WL 5277679, at *5 (citation omitted) (emphasis in original). Here, Plaintiffs allege no facts indicating that Defendants' purpose in placing third-party software on their Website and Online Access was to "injure plaintiffs tortiously" – they only say it was to "make more money." Plaintiffs' allegation that Defendants incorporated third-party software to "use the analytics and advertising services offered by these third parties to serve targeted advertisements . . . and, consequently, make more money" (CCAC ¶ 50) squarely precludes any attempt to invoke the crime-tort exception.

**2. Plaintiffs' CIPA § 632 Claim Is Deficient.**

CIPA § 632 prohibits a "person" from intentionally "us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication" without consent. Cal. Penal Code § 632(a). The CCAC does not plausibly allege that Defendants did so.

***First***, Plaintiffs' claim fails because third-party software technologies do not constitute a "device"—they are intangible "snippets of code," CCAC ¶ 73, purportedly embedded in the Website and Online Access. The plain meaning of the term and courts' historical interpretation demonstrate that a "device" must be *tangible* equipment. As one court explained, software code is not a "device" under the plain meaning of that term. *See Moreno v. San Francisco Bay Area Rapid Transit Dist.*, 2017 WL 6387764, at *5 (N.D. Cal. Dec. 14, 2017).

***Second***, Plaintiffs' claim fails because CIPA § 632 applies only to "confidential communications," which excludes any communication made where the parties may reasonably expect it to be overheard or recorded. Cal. Penal Code § 632(c). To qualify as confidential, a "party to the conversation must carry 'an objectively reasonable expectation that the conversation is not being overheard *or* recorded'"—including by the other party to the conversation. *Rodriguez v.*

*Google LLC*, No. 20-CV-04688-RS, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) (emphasis added) (citation omitted).

Here, the CCAC fails to plead facts sufficient to establish that any particular communication was "confidential" within the meaning of CIPA § 632. Plaintiffs do not identify which *specific* communications they contend were confidential, when or how those communications occurred, or facts describing the circumstances surrounding them—information necessary to assess whether a party could objectively expect that a given communication was not being overheard or recorded. Instead, Plaintiffs rely on the undifferentiated, conclusory allegation that they expected their information would "remain private," CCAC ¶ 11, without pleading any facts particular to the circumstances of any actual communication. That bare assertion does not suffice because it "does not reasonably give rise to the expectation that *nobody* (including the [website]) would record the communications." *Rodriguez*, 2021 WL 2026726, at *7 (dismissing Section 632 claim). Absent factual allegations establishing the circumstances of a specific communication, Plaintiffs cannot plausibly plead the objectively reasonable expectation of non-disclosure that CIPA § 632 requires. *See People v. Nakai*, 183 Cal. App. 4th 499, 518 (2010) (internet communications not "confidential" under CIPA § 632 where "the circumstances reflect that the communications could have easily been shared or viewed").

**3. Plaintiffs' Claim Under CIPA §§ 638.50 and 638.51 Is Deficient.**

CIPA § 638.51(a) prohibits a person from "install[ing] or us[ing] a pen register or trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51(a). A pen register is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).

The plain language of the statute and legislative history establish that CIPA § 638.51(a)'s pen register restrictions apply only to communications through a telegraph or telephone, not to internet communications. *See Smith v. LoanMe, Inc.*, 11 Cal. 5th 183, 191 (2021) (finding Legislature's intent evidenced through their amendments to CIPA "to take account of privacy issues raised by increased use of cellular and cordless telephones"); *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal.Super. Jan. 27, 2025) (CIPA's legislative history suggests "pen register" and "track and trace devices" refer to telephone-tracing technology, not internet communications). In fact, the California Legislature amended CIPA § 638 as recently as 2015, adopting the same authorization provision in CIPA § 638.52 that courts have relied on under the federal Pen Register Act to find that the Act applied only to mechanical, telephone number-tracing technology, not technology used to collect the IP address from a desktop computer. *See* Cal. Penal Code § 638.52(d)(1), (3).

Extending § 638.51 to website technology is not a permissible application of the statute to new technology. Courts may "apply a legal text to technologies that *did not exist when the text was created*." *Apple Inc. v. Superior Ct.*, 292 P.3d 883, 887 (Cal. 2013) (emphasis added). But that principle does not apply here because the internet was not a new or unforeseen technology in 2015 when § 638.51 was enacted. To the contrary, the Legislature was demonstrably aware of the internet, and elsewhere in other statutes drew clear, express lines around online conduct when it intended to regulate it. *See* CCPA §§ 1798.140(v)(1)(F), 1798.120. Any application of § 638.51 to internet activity would rewrite the language the Legislature chose to limit to telephone lines.

Recent Northern District of California decisions addressing § 638.51 illustrate the deficiencies in Plaintiffs' claim. In *Mitchener v. CuriousityStream*, Judge Wise explained that a "trap and trace device" by statutory definition "captures identifying information ***about*** a

communication ***but not the contents*** of a communication." No. 25-CV-01471-NW, 2025 WL 2272413, at *4 (N.D. Cal. Aug. 6, 2025) (internal quotation marks and citation omitted) (emphasis in original); *see also Kishnani v. Royal Caribbean Cruises Ltd.*, No. 25-CV-01473-NW, 2025 WL 1745726, at *4 (N.D. Cal. June 24, 2025), *appeal dismissed*, No. 25-4452, 2025 WL 2943080 (9th Cir. Oct. 3, 2025) (same). Judge Wise dismissed with prejudice the CIPA trap-and-trace claims based on software code embedded on defendant's website, finding that if the code collected *content* it would fall outside the statutory definition, and if it collected only *metadata* such as IP addresses the plaintiff would lack any cognizable privacy interest. *See Mitchener*, 2025 WL 2272413, at *4; *Kishnani*, 2025 WL 1745726, at *4.

**B. Plaintiffs Fail to State a Claim for Invasion of Privacy.**

"The California Constitution and the common law set a high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Where, as here, constitutional and common law claims are brought together, courts consider "(1) the nature of any intrusion upon reasonable expectations of privacy, and (2) the offensiveness or seriousness of the intrusion." *In re Facebook Internet Tracking Litig.*, 263 F. Supp. 3d 836, 846 (N.D. Cal. 2017). "The gravamen" of the claim "is the mental anguish sustained when both conditions of liability exist." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). Neither element exists here.

"Given the inherent nature of the internet, a number of courts have found that consumers do not have a reasonable expectation of privacy over their activity in that space." *Thomas v. Papa Johns Int'l, Inc.*, No. 22CV2012 DMS (MSB), 2024 WL 2060140, at *2 (S.D. Cal. May 8, 2024). Much of the information identified in the CCAC—page view events, URLs, IP addresses, cookie values, and user and device identifiers—constitutes unremarkable routing and analytics data that users necessarily and knowingly share with third parties as a condition of using the internet, "*and a reasonable user should expect as much*." *Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024

WL 3302066, at *7 (N.D. Cal. July 1, 2024) (emphasis in original). While Plaintiffs also invoke account information and transaction history (CCAC ¶¶ 137-146), those allegations are conclusory and untethered to any named Plaintiff's experience on the Website or Online Access.

Nor do Plaintiffs allege any *use* of their information "in a manner highly offensive to a reasonable person." *Hernandez*, 47 Cal. 4th at 286. This high standard requires "an exceptional kind of prying into another's private affairs," such as "taking the photograph of a woman in the hospital with a 'rare disease that arouses public curiosity.'" *Med. Lab'y Mgmt. Consultants v. Am. Broad. Companies, Inc.*, 306 F.3d 806, 819 (9th Cir. 2002). Conduct motivated by "legitimate business reasons"—as opposed to "socially repugnant . . . reasons"—cannot be considered "highly offensive to a reasonable person." *Hernandez*, 47 Cal. 4th at 286, 297.

The CCAC alleges merely that Defendants' purpose in deploying the third-party software technologies was for website analytics or marketing, CCAC ¶¶ 50, 306—a commercial motivation, not a "socially repugnant" one. Courts have consistently rejected privacy claims based on such conduct. *See, e.g.*, *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1047 (N.D. Cal. 2025) (disclosure of employment information, account information, and credit card eligibility does not rise to the level of an "egregious breach of social norms").

### C. Plaintiffs Lack Statutory Standing Under the UCL and CDAFA.

Plaintiffs fail to plausibly allege the economic harm required to establish standing for their CDAFA and UCL claims. *See Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1050 (N.D. Cal. 2018) (CDAFA requires "a showing of economic harm or loss"); *Hazel v. Prudential Fin., Inc.*, No. 22-CV-07465-CRB, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023) (UCL requires plaintiff to allege that it "ha[s] lost money or property" because of the defendant's conduct). Plaintiffs assert a "property interest" in their personal information and claim a loss of "money and/or property." CCAC ¶¶ 271, 275. But these allegations fail as a matter of law because "personal information

does not constitute property for purposes of a UCL claim." *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 714 (N.D. Cal. 2011), *aff'd,* 572 F. App'x 494 (9th Cir. 2014).

Nor do Plaintiffs adequately allege any money that they lost as a result of Defendants' conduct. Plaintiffs' theory of economic harm is, at bottom, that their personal information has some value and that Defendants benefited by allowing third parties to collect it. But that theory has been squarely rejected. *See Shah*, 768 F. Supp. 3d at 1048 ("Plaintiffs also cannot make an argument that the profit Defendant made as a result of disclosing Plaintiffs' data is sufficient to demonstrate a loss."); *Hazel*, 2023 WL 3933073, at *6 (N.D. Cal. June 9, 2023).

**D. Plaintiffs Fail to State a Viable Negligence Claim.**

California's "economic loss rule bars [Plaintiffs'] negligence claim" because it generally precludes "claims for negligence involving only economic loss." *Body Jewelz, Inc. v. Valley Forge Ins. Co.*, 241 F. Supp. 3d 1084, 1091-92 (C.D. Cal. 2017). Plaintiffs' claimed injuries are purely economic—*i.e.*, they do not involve physical injuries or property damage. Although Plaintiffs invoke the "special relationship" exception with the conclusory allegation that Defendants' "duty of care arose as a result of, among other things, the special relationship that existed between Edward Jones and its customers and prospective customers," CCAC ¶ 300, the CCAC lacks facts sufficient to support this alleged special relationship. *See J'Aire v. Gregory*, 24 Cal.3d 799, 804 (1979) (setting forth six-factor test necessary to establish special relationship). Nor can Plaintiffs plead this standard (with the potential exception of Plaintiff Shah, who was not an accountholder) because the special relationship "is not applicable here, where, unlike in *J'Aire*, Plaintiff and Defendant are in privity of contract." *Body Jewelz*, 241 F. Supp. 3d at 1092 (citations omitted).

Further, the CCAC alleges no "appreciable, nonspeculative, present harm" caused by any breach of Defendants' alleged duties. *Low*, 900 F. Supp. 2d at 1032. Courts routinely dismiss negligence claims where plaintiffs allege only losses related to the "disclosure" of their "personal

data." *In re iPhone App. Litig.*, 844 F. Supp. 2d at 1064; *see also, e.g., Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 615 (9th Cir. 2021). The injuries Plaintiffs assert, CCAC ¶ 13, are rooted in the alleged risk of future harm, insufficient to support a negligence claim. *See Krottner v. Starbucks Corp.*, 406 F. App'x 129, 131 (9th Cir. 2010) ("mere danger of future harm, unaccompanied by present damage, will not support a negligence action.").

**E. Plaintiffs' Unjust Enrichment Claim Fails.**

Plaintiffs' unjust enrichment claim fails because "there is no cause of action in California labeled unjust enrichment." *Sepanossian v. Nat'l Ready Mix Co., Inc.*, 97 Cal. App. 5th 192, 206 (2023). Unjust enrichment is a remedy available where the remedies at law are inadequate. *See Shah*, 768 F. Supp. 3d at 1051. Because Plaintiffs' substantive claims fail, they "ha[ve] no viable basis for invoking entitlement to . . . unjust enrichment." *Forouzesh v. Starbucks Corp.*, No. CV 16-3830 PA (AGRX), 2016 WL 4443203, at *5 (C.D. Cal. Aug. 19, 2016).

**F. Plaintiffs Are Not Entitled to Equitable Relief.**

"It is well-established that a party is entitled to equitable relief only if there is no adequate remedy at law." *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 967 (8th Cir. 2005); *Aziz v. Allstate Ins. Co.*, No. 4:14-CV-934-CEJ, 2015 WL 13688049, at *2 (E.D. Mo. Feb. 27, 2015).

Plaintiffs' requests for equitable or injunctive relief scattered through the CCAC are untenable because Plaintiffs fail to demonstrate that they credibly lack an adequate remedy at law. While, in one breath, the CCAC makes passing references to absence of an adequate remedy at law, CCAC ¶¶ 230, 241, 293, in another breath Plaintiffs seek statutory and/or compensatory damages arising from the same underlying conduct. *See id.* ¶¶ 229, 242, 292. Because Plaintiffs' own pleading demonstrates that damages would compensate any injury they claim to have suffered, their threadbare recitations of inadequacy cannot sustain a request for equitable relief.

### G. Plaintiff Shah's Claims Should Be Dismissed Because He Voluntarily Dismissed Them with Prejudice.

On February 18, 2026, Plaintiff Shah filed a putative class action in the Central District of California against Defendant Edward Jones, invoking the same statutes and alleging the same conduct at issue as it relates to him in the CCAC. Dkt. 23-1, Ex. A. The day after that action was assigned to District Judge Fred Slaughter, Plaintiff Shah "voluntarily dismisse[d] his claims, ***with prejudice***, against [Edward Jones]." Dkt. 23-1, Ex. B (emphasis added). That same day, he filed a new, identical complaint in the Northern District of California. Dkt. 23-1, Ex. C. Those same allegations now appear for the third time in the CCAC.[4]

A dismissal with prejudice "has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action." *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986). Dismissal under Rule 41(a)(1) "require[s] no judicial approval or review as a prerequisite to dismissal . . . [and] is effective upon filing, with no court action required." *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1080 (8th Cir. 2017). "By obtaining such a dismissal, the plaintiff submits to a judgment that serves to bar his claims forever." *Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995).

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

[4] Plaintiff Shah's conduct here reflects a broader pattern of serial class action litigation – by some estimates, more than 17 class actions filed in the California federal courts arising from Plaintiff Shah's online experience. For example, in *Ingraham v. Capital One*, Case No. 3:24-cv-05985-TLT-SK (N.D. Cal. 2024), Plaintiff Shah similarly filed a putative class action, only to abruptly dismiss his claims with prejudice after his deposition testimony raised serious questions about his putative claims and ability to serve as a class representative. *Id.*, Dkt. Nos. 159, 160, 162.

Dated: September 16, 2026.

Respectfully submitted,

**THOMPSON COBURN LLP**

/s/ *Maria G. Zschoche*
Maria G. Zschoche #56635
Brian A. Lamping #61054
505 N. 7th Street
St. Louis, MO 63101
(314) 552-6000
(314) 552-7000 (facsimile)
mzschoche@thompsoncoburn.com
blamping@thompsoncoburn.com

**K&L GATES LLP**

Michael J. Stortz #139386(CA)
Tae H. Kim #331362(CA)
K. Taylor Yamahata #347192(CA)
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
(415) 882-8200
(415) 882-8220 (facsimile)
michael.stortz@klgates.com
tae.kim@klgates.com
taylor.yamahata@klgates.com

*Attorneys for Defendants*
EDWARD D. JONES & CO., L.P., and
THE JONES FINANCIAL COMPANIES, L.L.L.P.