**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| MARK MAURER, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EDWARD D. JONES & CO., L.P., et al.,<br><br>Defendants. | Case No. 4:26-cv-01294-MAL |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE CONSOLIDATED CLASS ACTION COMPLAINT'S CLASS ALLEGATIONS AND REQUESTS FOR INJUNCTIVE RELIEF

# TABLE OF CONTENTS


INTRODUCTION ....................................................................................................1

PROCEDURAL BACKGROUND ..........................................................................2

STATEMENT OF ALLEGED FACTS ..................................................................3

LEGAL STANDARD ..............................................................................................5

ARGUMENT ...........................................................................................................5

I. Plaintiffs' Proposed Classes Are Overbroad.......................................................5

II. Plaintiffs Cannot Cure These Deficiencies Via an Impermissible Fail-Safe Class .............8

III. Plaintiffs Cannot Maintain a Class under Rule 23(b)(3) because Individualized Inquiries Predominate ..........................................................................9

IV. Individualized Inquiries Preclude Plaintiffs from Meeting Rule 23(b)(2)'s Heightened Cohesiveness Requirement..............................................................11

V. Nationwide Class Allegations Are Overbroad Given Myriad State Law Differences ......12

CONCLUSION.......................................................................................................15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Adams v. Kansas City Life Ins. Co.*, 192 F.R.D. 274 (W.D. Mo. 2000) ....13, 15

*Auer v. Trans Union, LLC*, 902 F.3d 873 (8th Cir. 2018) ....6

*Avritt v. Reliastar Life Ins. Co*., 615 F.3d 1023 (8th Cir. 2010) .... *passim*

*BJC Health Sys. v. Columbia Cas. Co*., 478 F.3d 908 (8th Cir. 2007) ....5

*Cleary v. Philip Morris Inc*., 656 F.3d 511 (7th Cir. 2011) ....14

*Donelson v. Ameriprise Fin. Servs., Inc*., 999 F.3d 1080 (8th Cir. 2021) ....5, 11, 12

*Ebert v. Gen. Mills, Inc*., 823 F.3d 472 (8th Cir. 2016) ....9, 10, 11, 12

*Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616 (8th Cir. 2021) ....5, 8, 10

*Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773 (8th Cir. 2013) ....6

*Howell v. New York Post Co*., 612 N.E.2d 699 (N.Y. 1993) ....14

*In re ConAgra Foods Inc*., 908 F. Supp. 3d 919 (C.D. Cal. 2015) ....14

*In re Folgers Coffee Marketing*, 159 F.4th 1151 (8th Cir. 2025) ....14

*In re Genetically Modified Rice Litig.*, 251 F.R.D. 392 (E.D. Mo. 2008) ....10

*In re St. Jude Medical, Inc.*, 522 F.3d 836 (8th Cir. 2008) ....10, 11, 12, 13

*In re State Farm Fire & Cas. Co.*, 872 F.3d 567 (8th Cir. 2017) ....11

*Johannessohn v. Polaris Industries Inc.*, 9 F.4th 981 (8th Cir. 2021) ....5, 6, 10

*Jones v. Bloomingdales.com, LLC*, 124 F.4th 535 (8th Cir. 2024) ....6, 7

*Kraetsch v. United Serv. Auto. Ass'n*, No. 4:14-CV-264-CEJ, 2015 WL 1457015 (E.D. Mo. Mar. 30, 2015) ....10

*Lindsay Transmission, LLC v. Off. Depot, Inc.,* No. 4:12-CV-221 CEJ, 2013 WL 275568 (E.D. Mo. Jan. 24, 2013) ....10

*Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293 (7th Cir. 1995) ....13

*Mazza v. Am. Honda Motor Co*., 666 F.3d 581 (9th Cir. 2012) ....13, 14

*Nguyen v. Raymond James & Associates, Inc.*, Case No. 8:20-cv-195-CEH-AAS, 2022 WL 17811068 (M.D. Fl. Dec. 19, 2022) ....................2

*Orduno v. Pietrzak*, 932 F.3d 710 (8th Cir. 2019) ....................8, 10

*Ruzicka Elec. & Sons, Inc. v. Int'l Bhd. of Elec. Workers, Loc. 1, AFL-CIO*, 427 F.3d 511 (8th Cir. 2005) ....................14

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ....................6

*Thompson v. Vintage Stock, Inc.*, No. 4:23-CV-00042-SRC, 2024 WL 492052 (E.D. Mo. Feb. 8, 2024) ....................8

*Tucker v. Ford Motor Co.*, No. 4:22-CV-00430-AGF, 2023 WL 2662887 (E.D. Mo. Mar. 28, 2023) ....................5

*Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016) ....................9

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ....................13

*Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730 (7th Cir. 2019) ....................14

*WJLA-TV v. Levin*, 264 Va. 140 (2002) ....................14

**Statutes and Constitutional Provisions**

18 U.S.C. § 2510 ....................4

28 U.S.C. § 1404 ....................13

Cal. Bus. & Prof. Code § 17200 ....................4

Cal. Penal Code § 502 ....................4

Cal. Penal Code § 630 ....................4

Cal. Penal Code § 631 ....................4

Cal. Penal Code § 632 ....................4

Cal. Penal Code § 638.50 ....................4

Cal. Penal Code § 638.51 ....................4

Electronic Communications Privacy Act ....................4

Unfair Competition Law ....................4

**Rules**

Fed. R. Civ. P. 12(f) .......... 5

Fed. R. Civ. P. 23 .......... 1, 2, 11

Fed. R. Civ. P. 23(a) .......... 5

Fed. R. Civ. P. 23(b) .......... 5

Fed. R. Civ. P. 23(b)(2) .......... 2, 11, 12

Fed. R. Civ. P. 23(b)(3) .......... *passim*

Fed. R. Civ. P. 23(c)(1)(A)'s .......... 5

FINRA Rule 2268(f) .......... 2

FINRA Rule 12204(d) .......... 2

**Other Authorities**

Cal. Const. Art. I, § 1 .......... 4

## INTRODUCTION

Plaintiffs Theresa Stevens, Dennis Frasher, and Vishal Shah ("Plaintiffs") seek to convert three materially different alleged online experiences with Defendants Edward D. Jones & Co., L.P. ("Edward Jones") and The Jones Financial Companies, L.L.L.P. (collectively, "Defendants") into a nationwide class action. Plaintiffs Stevens and Frasher allege that as Edward Jones clients, they used the password-protected Online Access portal; Plaintiff Shah alleges only a single visit to www.edwardjones.com to complete an advisor-matching questionnaire. Yet Plaintiffs seek to represent every person nationwide who used any Edward Jones website during an undefined period and whose communications were allegedly disclosed to, intercepted by, or recorded by third-party software, plus an identically defined California Subclass. On its face, the Consolidated Class Action Complaint ("CCAC") reveals that neither class can satisfy Rule 23.

The proposed classes are facially overbroad, sweeping together clients, prospective clients, casual visitors, and authenticated Online Access users into one sprawling class, despite the individualized inquiries each user's different interactions require. The proposed classes also include people who lack Article III standing and people who consented to the third-party technologies alleged to be at issue, defeating Plaintiffs' theory of liability. And Plaintiffs cannot cure these defects by limiting membership to those who satisfy the elements of the violation, because that would create an impermissible fail-safe class.

Plaintiffs' nationwide claims fare no better. Plaintiffs plead common-law invasion of privacy, negligence, and unjust enrichment claims for a nationwide class, but identify only the named Plaintiffs who are California residents alleging only California-based interactions. Adjudicating absent members' claims nationwide would require the application of varying state

laws and an individualized assessment of each person's online interactions, disclosure, consent, injury, and remedy—precluding any viable Rule 23(b)(3) class.

Finally, Plaintiffs seek classwide injunctive and declaratory relief without satisfying Rule 23(b)(2). No single injunction would relieve every class member; their claims depend on individual proof of each user's interaction, information captured, consent, injury, and governing law, defeating Rule 23(b)(2)'s heightened cohesiveness requirement.

Plaintiffs have pleaded a grossly improper class definition that cannot meet well-recognized standards under Rule 23. The Court should strike Plaintiffs' "Nationwide Class" and "California Subclass" allegations, their class-based allegations in each cause of action,[1] and their requests for injunctive relief.[2]

**PROCEDURAL BACKGROUND**

Mark Maurer—a New York resident with no Edward Jones account—originally filed this putative class action on February 6, 2026 in the Northern District of California, later amending to add four California-based plaintiffs: Theresa Stevens, Richard Mortensen, Chris Wall, and Dennis Frasher. Dkt. 1, 16. Separately, on February 18, 2026, Vishal Shah filed his own putative class action in the Central District of California based on an entirely different set of facts – rather than alleging any account or client relationship, Plaintiff Shah alleged only that he visited www.edwardjones.com one time to explore finding a financial advisor. Dkt. 23-1, Ex. A. The day

[1] Defendants reserve the right to compel arbitration of the individual claims of Plaintiffs Stevens and Frasher at the appropriate juncture, pursuant to the arbitration provisions in their account agreements. *See Nguyen v. Raymond James & Associates, Inc.*, Case No. 8:20-cv-195-CEH-AAS, 2022 WL 17811068, *5 (M.D. Fl. Dec. 19, 2022) (granting defendant's motion to compel arbitration following order resolving putative class claims) (citing FINRA Rule 2268(f)); *see also* FINRA Rule 12204(d).

[2] Defendants concurrently move to dismiss each named Plaintiff's individual claims. If granted, that motion would independently dispose of this action, since no named Plaintiff would remain to represent any class.

after that action was assigned to a district judge, Plaintiff Shah voluntarily dismissed it with prejudice, *id.*, Ex. B, and that same day, filed an identical complaint in the Northern District of California, *id.*, Ex. C, where it was later consolidated with this action.

On May 12, 2026, the Honorable James Donato in the Northern District of California consolidated the actions and directed Plaintiffs' counsel to file a single complaint, which they did on June 19, 2026. Dkt. 46, 47. In the process of amending, Messrs. Maurer, Mortensen, and Wall voluntarily dismissed their claims and are no longer named in the operative CCAC. That leaves only Plaintiffs Stevens, Frasher, and Shah as putative class representatives.

By order dated August 11, 2026, Judge Donato transferred this action to this District without considering Defendants' pending motion to dismiss. Following transfer, this case was assigned to this Court. Dkt. 61, 62.

## STATEMENT OF ALLEGED FACTS

Edward Jones operates certain online sites, including www.edwardjones.com and onlineaccess.edwardjones.com ("Online Access"), the Edward Jones client portal. Through these sites, prospective and current clients may "learn more about the types of services Edward Jones offers," seek advisory services, access investment resources, and view account information. CCAC (Dkt. 47) ¶¶ 1–2, 70. Plaintiffs allege Edward Jones used various third-party software (Google Analytics, Google Tag Manager, Google Ads, Google DoubleClick, Meta Pixel, LinkedIn Insight Tag, Adsrvr Pixel, and ClickTale Session Replay) on "all pages of the Edward Jones websites," disclosing or enabling interception of users' communications and private information by third parties. *Id.* ¶¶ 4–13.

However, Plaintiffs allege materially different personal experiences. Plaintiffs Stevens and Frasher allege that they have been Edward Jones clients since approximately 2005 and 2013,

respectively, and frequently use edwardjones.com and the Online Access portal, which "can only be accessed by customers…who sign in" with a User ID and password. *Id.* ¶¶ 27–30, 35–38, 71. They claim third parties received their communications, including full transaction histories. *Id.* ¶¶ 30, 38.

By contrast, Plaintiff Shah does not allege he was a client. He alleges a single October 2025 visit to edwardjones.com to complete an advisor-matching questionnaire, which required providing information about his finances, investments, employment, and other matters. *Id.* ¶¶ 41–48. Plaintiff Shah alleges third parties received his "private and identifiable communications," including his personally identifiable information ("PII") and survey *answers*, in a single interaction that lasted, at most, the time it took to complete an online form. *Id.* ¶¶ 42, 45–46.

Plaintiffs seek to represent a Nationwide Class of "[a]ll natural persons in the United States and its territories who, during the Class Period, used the Edward Jones Properties, and had their private communications disclosed to and/or intercepted or recorded by third parties via the Tracking Technologies," plus a nearly identical California Subclass. *Id.* ¶ 181. The Class Period has no fixed date, running instead from whatever date the Court sets after resolving limitations, tolling, concealment, and accrual issues, through judgment. *Id.* ¶ 183.

On behalf of the Nationwide Class, Plaintiffs assert claims under the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*; common-law invasion of privacy; negligence; and unjust enrichment. CCAC (Dkt. 47) ¶¶ 190–205, 243–254, 295–312. On behalf of the California Subclass, Plaintiffs assert claims under the California Invasion of Privacy Act, Cal. Penal Code §§ 631, 632, 638.50, 638.51; invasion of privacy, Cal. Const. art. I, § 1; Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; and the Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502. *Id.* ¶¶ 206–242, 255–294.

Each claim seeks relief on behalf of one or both classes. Plaintiffs also request certification, classwide declaratory relief, an injunction, and damages, restitution, fees, costs, and other relief.

**LEGAL STANDARD**

Courts "enjoy liberal discretion" to strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. *BJC Health Sys. v. Columbia Cas. Co*., 478 F.3d 908, 917 (8th Cir. 2007); Fed. R. Civ. P. 12(f). Though generally disfavored, a court may strike class allegations "at the pleading stage if it is apparent from the pleadings that the class cannot be certified[;]" indeed, in that circumstance, it would be an abuse of discretion not to do so. *Donelson v. Ameriprise Fin. Servs., Inc*., 999 F.3d 1080, 1092 (8th Cir. 2021). "Striking class claims that are insufficient on the face of the plaintiff's complaint is appropriate because such claims are 'impertinent' material under Rule 12(f) and requiring the defendant to spend time and money to address to such claims constitutes prejudice." *Tucker v. Ford Motor Co.*, No. 4:22-CV-00430-AGF, 2023 WL 2662887, at *2 (E.D. Mo. Mar. 28, 2023) (citing *Donelson*, 999 F.3d at 1092.)

Plaintiffs bear the burden of satisfying Rule 23(a) and one subsection of Rule 23(b*). See Johannessohn v. Polaris Industries Inc*., 9 F.4th 981, 984 (8th Cir. 2021). While courts "do not address the merits at this stage," they "do consider the nature of the underlying claim to determine its suitability for class certification." *Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 620 (8th Cir. 2021). Striking class allegations at the pleading stage is consistent with Rule 23(c)(1)(A)'s direction to decide certification "at an early practicable time," without awaiting a certification motion*.* *Donelson*, 999 F.3d at 1092.

**ARGUMENT**

**I. Plaintiffs' Proposed Classes Are Overbroad.**

Both proposed classes are facially overbroad, sweeping together clients, prospective clients, casual visitors, and authenticated Online Access users into a single, undifferentiated class.

Among other consequences, this overbreadth means the classes encompass persons who lack Article III standing. "A class cannot be certified if it contains members who lack standing," *Johannessohn*, 9 F.4th at 987. A named plaintiff "cannot represent a class of persons who lack the ability to bring a suit themselves," and "[a] class must therefore be defined in such a way that anyone within it would have standing." *Id.*; *Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1034 (8th Cir. 2010); *Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 779 (8th Cir. 2013).

Article III standing requires a plaintiff to show (1) injury in fact, (2) a causal connection to the challenged conduct, and (3) likely redress by a favorable decision. *Johannessohn*, 9 F.4th at 987 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The injury must be "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

Plaintiffs propose classes that would encompass "[a]ll natural persons[,]" either nationwide or in California, "who…used the Edward Jones Properties, and had their private communications disclosed to and/or intercepted or recorded by third parties." CCAC (Dkt. 47) ¶ 181. The proposed classes are not limited to account holders, Online Access users, or questionnaire respondents, and instead sweep in every person who ever visited any Edward Jones page, since the third-party software allegedly exists "on all pages of the Edward Jones websites." *Id.* ¶ 9. Thus, these definitions include persons who consented to any purported disclosures and thus were not injured. *Auer v. Trans Union, LLC*, 902 F.3d 873, 877 (8th Cir. 2018) (consent "serve[s] as a bar to recovery in a tort action"); *Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 540 (8th Cir. 2024) (no invasion of privacy where plaintiff "voluntarily conveyed the information she says is private").

These definitions also include casual online visitors—those who accidentally clicked through, or simply visited to "learn more about the types of services Edward Jones offers." CCAC

(Dkt. 47) ¶ 70. Plaintiffs fail to allege what specific information Defendants disclosed or shared about these visitors. Instead, Plaintiffs allege that "[e]very prospective and current customer that visited the Edward Jones website had their identifiable PII, including IP address and identifiable cookies, and private data disclosed to and intercepted by third parties through" third-party software. *Id.* ¶ 121. However, Plaintiffs describe "prospective customers" as persons who completed the financial-advisor questionnaire (*see id.* ¶¶ 122-136), which would not include persons who passively visited the Edward Jones website and did not input any personal data.

A similar scenario was presented in *Jones v. Bloomingdales.com*, *supra*. There, the Eighth Circuit rejected the proposition that every website visitor had Article III standing to assert privacy-based claims, such as claims for intrusion-upon-seclusion and ECPA claims, based on defendant's use of session-replay technology that allegedly recorded users' "'movements, clicks, keystrokes (such as text being entered into an information field or text box), search terms, URLs of web pages visited, as well as ... what [she] searched for, what [she] looked at, the information [she] inputted, and what [she] clicked on.'" *Id.* at 537–38. The court held the plaintiff lacked standing because "the movements of a cursor or a person's general navigation across a website" does not "conve[y] any information that a customer could reasonably expect to keep private from the website owners themselves." *Id.* at 539. That such data may be commercially valuable "does not mean that the information gathered is information that a website visitor could reasonably expect to keep private from the website owners or their agents." *Id.* at 540. The situation is "akin to…a security camera at a brick-and-mortar store," where "no reasonable customer…could claim a privacy interest in her general movements…in the public parts of that store." *Id.* at 539.

Here, Plaintiffs' proposed classes include individuals who do not have Article III standing. The putative class definitions and corresponding allegations should be stricken.

## II. Plaintiffs Cannot Cure These Deficiencies Via an Impermissible Fail-Safe Class.

Nor can Plaintiffs cure these defects by redefining the classes to include only persons who lacked consent or suffered a cognizable injury, as that would create impermissible fail-safe classes. Such classes "preclude[] membership unless a putative member would prevail on the merits[,]" and are prohibited because members could seek a remedy without being bound by an adverse judgment. *Orduno v. Pietrzak*, 932 F.3d 710, 716 (8th Cir. 2019); *Ford*, 995 F.3d at 624. Moreover, fail-safe classes are "unmanageable" "because the court cannot know to whom notice should be sent." *Orduno*, 932 F.3d at 716–17.

Definitions that incorporate "contested elements of liability" are hallmarks of a fail-safe class. *See Ford*, 995 F.3d at 624; *Thompson v. Vintage Stock, Inc.*, No. 4:23-CV-00042-SRC, 2024 WL 492052, at *8–10 (E.D. Mo. Feb. 8, 2024). Here, Plaintiffs' class definitions condition membership on whether a person "had their private communications disclosed to and/or intercepted or recorded by third parties." CCAC (Dkt. 47) ¶ 181. This bakes in contested liability elements—for example, whether a covered communication occurred, whether a third party intercepted or received it, whether the person suffered a traceable injury, and whether consent defeats liability—rather than providing neutral criteria for inclusion in the proposed classes.

Chief Judge Clark reached the same conclusion in *Thompson v. Vintage Stock, Inc*. There, the proposed class definitions were fail-safe because membership in the class was dependent on consent, the character of the challenged messages, and whether the conduct violated the statute which tracked disputed elements of liability. 2024 WL 492052 at *8–10 ("including consent as part of the class definition would make it a fail-safe class because if the answer is 'no' for a certain class member, that member would not 'be bound by an adverse judgment.'").

Plaintiffs' classes suffer the same flaw: they may not remain overinclusive of consenting or uninjured persons, nor cure that overbreadth with a definition that already limits membership to

persons who prevail on the merits. The Court should strike the class definitions and corresponding allegations.

### III. Plaintiffs Cannot Maintain a Class under Rule 23(b)(3) because Individualized Inquiries Predominate.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). A common question does not end the inquiry, since "the predominance criterion is far more demanding." *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 478 (8th Cir. 2016). Individual questions require evidence that "varies from member to member," while common questions permit "the same evidence…for each member." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). In essence, "the defendant's liability to all plaintiffs may be established with common evidence." *Avritt*, 615 F.3d at 1029.

Plaintiffs have not pleaded a uniform experience capable of supplying the requisite common proof. The Nationwide Class and California Subclass would sweep in millions of people who interacted with Edward Jones's websites in fundamentally different ways. Some visited only public marketing pages to "learn more about the types of services Edward Jones offers," CCAC ¶ 70; some completed a financial advisor questionnaire without ever becoming clients, *id.* ¶¶ 41-48, 122-136; and others logged into the password-protected Online Access portal to review account balances, transaction histories, or statements, sometimes for decades, *id.* ¶¶ 27-30, 35-38. Each of these groups encountered different pages, entered different information (or none at all), and would have triggered a different subset of the identified third party software technologies, since Plaintiffs do not allege that every technology operated identically, or at all, on every page of the site. *Id.* ¶¶ 4-13. Class members also used different devices, browsers, and privacy or cookie settings and consents that materially affect whether, and what, information a given technology could capture

or transmit, and they joined and left the putative Class Period at different, individually determined times, given its undefined start and end dates. *Id.* ¶¶ 2-13, 181-83. Proof of liability and injury as to any single person therefore says little or nothing about the next – whether a given technology was present on the pages that member visited, what information (if any) that member entered, whether that member consented, and whether that member suffered a cognizable injury all require individualized inquiry. That basis alone is sufficient to strike Plaintiffs' Rule 23(b)(3) allegations. *See Lindsay Transmission, LLC v. Off. Depot, Inc.,* No. 4:12-CV-221 CEJ, 2013 WL 275568, at *5 (E.D. Mo. Jan. 24, 2013); *see also Kraetsch v. United Serv. Auto. Ass'n*, No. 4:14-CV-264-CEJ, 2015 WL 1457015, at *5 (E.D. Mo. Mar. 30, 2015).

Predominance cannot be met where the damages assessment "requires an extensive inquiry involving the circumstances of that particular plaintiff." *In re Genetically Modified Rice Litig.*, 251 F.R.D. 392, 398-99 (E.D. Mo. 2008). The Eighth Circuit has repeatedly rejected certification where liability turns on individualized evidence of communications, reliance, and injury. *See e.g, Johannessohn*, 9 F.4th at 985; *In re St. Jude Medical, Inc.*, 522 F.3d 836, 841 (8th Cir. 2008); *Ford*, 995 F.3d at 623*; Ebert,* 823 F.3d at 480*; Orduno*, 932 F.3d at 716 (members must "present evidence of the circumstances under which their particular information was accessed," which "will vary from class member to class member").

In *Avritt*, varying representations, each purchaser's understanding, and reliance precluded common proof. 615 F.3d at 1031–37. In *Ford*, individualized transaction-by-transaction inquiry defeated predominance despite an algorithmic damages theory. 995 F.3d at 622–24. In this case, as in *Ebert*, individual issues predominate on liability and damages, since no generalized proof can establish exposure, consent, interception, injury, causation, or damages across these proposed classes. 823 F.3d at 479. Further, "[w]hat matters to class certification . . . is not the raising of

common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *In re State Farm Fire & Cas. Co.*, 872 F.3d 567, 572 (8th Cir. 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Because individualized inquiries overwhelm any common questions and preclude any common answers about Edward Jones's alleged use of third-party software, Plaintiffs cannot satisfy Rule 23(b)(3), and their class allegations should be stricken.

## IV. Individualized Inquiries Preclude Plaintiffs from Meeting Rule 23(b)(2)'s Heightened Cohesiveness Requirement.

Plaintiffs invoke Rule 23 generally but do not allege either class satisfies Rule 23(b)(2). Yet they seek classwide injunctive and declaratory relief, including an order to "enjoin Edward Jones from making similar disclosures…in the future, to require destruction of the information it has already disclosed, and to fully articulate…the specific information it discloses to third parties." CCAC (Dkt. 47) ¶ 12; *id*. at 54.

Rule 23(b)(2) applies only where the opposing party "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Certification is proper "only when ***the primary relief sought*** is declaratory or injunctive." *St. Jude*, 425 F.3d at 1121 (emphasis added); *Avritt*, 615 F.3d at 1036 (denying class certification where "case was primarily about money damages, not injunctive relief").

Class claims "must be cohesive" under Rule 23(b)(2), a "more stringent" requirement than Rule 23(b)(3) predominance. *St. Jude*, 425 F.3d at 1121; *Ebert*, 823 F.3d at 472. Thus, allegations should be stricken where "[t]he existence of a significant number of individualized factual and legal issues defeats cohesiveness." *Donelson*, 999 F.3d at 1092-93. As shown above, the

significant individualized factual and legal issues defeat the cohesion that Rule 23(b)(2) requires. *See* Section II.C, *supra*; *Ebert*, 823 F.3d at 481.

Plaintiffs also identify no single injunction redressing every member's injury; their generalized request to "enjoin Edward Jones from engaging in the unlawful practices…described herein," CCAC (Dkt. 47) at 54, "does not apply uniformly to the entire class" where liability and relief are "highly individualized." *Ebert*, 823 F.3d at 481. Members visited different pages, submitted different information and consents, and had different relationships with Edward Jones, defeating any single injunction resolving all claims at once. *See Avritt*, 615 F.3d at 1036. Plaintiffs thus cannot satisfy Rule 23(b)(2)'s cohesiveness requirement. *See Donelson*, 999 F.3d at 1092–93. Neither is Plaintiffs' *primary* request for relief injunctive – their claims seek actual or statutory damages, disgorgement of alleged profits, punitive and nominal damages, restitution, interest, attorneys' fees, and costs. *See* CCAC (Dkt. 47) ¶¶ 13, 188, 205, 219, 229, 242, 251–53, 263-64, 279, 292–94, 303, 312; *id*. at 54. The CCAC's generalized injunction request is thus an additional remedy attached to a damages-centered case—not the primary relief Rule 23(b)(2) requires. *See St. Jude*, 425 F.3d at 1121; *Avritt*, 615 F.3d at 1036. Thus, the CCAC cannot support a 23(b)(2) class, and the Court should strike Plaintiffs' request for injunctive relief.

## V. Nationwide Class Allegations Are Overbroad Given Myriad State Law Differences.

Plaintiffs assert common-law invasion of privacy, negligence, and unjust enrichment claims on behalf of a Nationwide Class spanning every state and territory, CCAC (Dkt. 47) ¶¶ 181, 243–54, 295–312, yet all three named Plaintiffs are California residents alleging only California-based interactions. *Id*. ¶¶ 25, 33, 41. While the California statutory claims are properly confined to the California Subclass, *id*. ¶¶ 206–42, 255–94, the CCAC identifies no governing law for absent non-California members' common-law claims, and it pleads no plan for managing the resulting

state-law variations. *See Adams v. Kansas City Life Ins. Co.*, 192 F.R.D. 274, 278 (W.D. Mo. 2000).

This deficiency is fatal to the nationwide class allegations because the Eighth Circuit requires an individualized choice-of-law analysis before applying one state's law nationwide.[3] *See Hale, 942 F.3d at 404–06; St. Jude*, 425 F.3d at 1120. Because this action was transferred under 28 U.S.C. § 1404 from California, California's choice-of-law rules govern. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) explains how California's choice-of-law issues present an insuperable obstacle to applying California law nationwide. "California law may only be used on a classwide basis if the interests of other states are not found to outweigh California's interest," *id*. at 590, and no such showing can be made here. *Mazza*'s three-step test—identifying conflicts, comparing state interests, and assessing impairment, *id*. at 590-94—confirms that different state laws govern putative members' claims, precluding a nationwide class on any of the three common-law theories.

As for negligence, concepts like duty, foreseeability, proximate cause, and the economic loss rule vary significantly among states. *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995). These differences are material because Plaintiffs' theory requires determining whether Defendants owed a duty to each user, whether disclosure or interception proximately caused a cognizable injury, and whether consent or other facts defeat liability. States where members allegedly suffered injury have a direct interest in applying their own duty, injury, and causation rules. *See id*. (citing cases).

---

[3] Plaintiffs Stevens' and Frasher's account agreements contain choice-of-law provisions that independently bear on the applicable law inquiry. Dkt. 49-1, Exs. 1, 2. Defendants preserve all rights based on those provisions.

Invasion of privacy actually describes four distinct torts under Missouri law—intrusion upon seclusion, appropriation, unreasonable publicity, and false light. *Ruzicka Elec. & Sons, Inc. v. Int'l Bhd. of Elec. Workers, Loc. 1, AFL-CIO*, 427 F.3d 511, 524 (8th Cir. 2005). Virginia does not recognize intrusion upon seclusion*, see WJLA-TV v. Levin*, 264 Va. 140, 160 n.5 (2002), and New York recognizes no common-law privacy tort *at all*. *See Howell v. New York Post Co*., 612 N.E.2d 699, 703 (N.Y. 1993). These differences go to whether an absent member can even assert a claim, not merely how a shared claim is adjudicated, since each state has its own interest in defining the privacy rights available to its residents.

Unjust-enrichment elements likewise "vary materially from state to state." 666 F.3d at 591. California treats it only as a remedial theory tied to other claims*, In re ConAgra Foods Inc*., 908 F. Supp. 3d 919, 1114 (C.D. Cal. 2015), while Illinois courts are divided over whether it is an independent cause of action. *Compare Cleary v. Philip Morris Inc*., 656 F.3d 511, 516 (7th Cir. 2011), *with Vanzant v. Hill's Pet Nutrition, Inc*., 934 F.3d 730, 740 (7th Cir. 2019). "[W]hether a particular transaction might be considered inequitable or unjust turns on the specific circumstances of each transaction," placing individual inquiries "front and center." *In re Folgers Coffee Marketing*, 159 F.4th 1151, 1158 (8th Cir. 2025).

Applying California law to residents of states that reject or limit the availability of relief under common law would override those states' policy choices, and California's interest in reaching nonresidents' out-of-state interactions does not outweigh that impairment. Under *Mazza*, the law of the jurisdiction of injury—not California law—must govern each non-California member's privacy claim. 666 F.3d at 592–94. The Court cannot displace the law of the state with the predominant interest merely because Plaintiffs seek to aggregate claims. *Mazza*, 666 F.3d at 592–94.

California law thus cannot govern these claims nationwide under *Mazza*. "[V]ariations in state law may swamp any common issues and defeat class certification under Rule 23(b)(3)." *Hale, 942 F.3d at 403; Adams*, 192 F.R.D. at 277.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court strike the proposed Nationwide Class and California Subclass allegations, the class allegations incorporated throughout Plaintiffs' claims, and the requests for classwide injunctive and corresponding declaratory relief.

Dated: September 16, 2026.

Respectfully submitted,

**THOMPSON COBURN LLP**

/s/ *Maria G. Zschoche*
Maria G. Zschoche #56635
Brian A. Lamping #61054
505 N. 7th Street
St. Louis, MO 63101
(314) 552-6000
(314) 552-7000 (facsimile)
mzschoche@thompsoncoburn.com
blamping@thompsoncoburn.com

**K&L GATES LLP**

Michael J. Stortz #139386(CA)
Tae H. Kim #331362(CA)
K. Taylor Yamahata #347192(CA)
Four Embarcadero Center, Suite 1200
San Francisco, CA 94111
(415) 882-8200
(415) 882-8220 (facsimile)
michael.stortz@klgates.com
tae.kim@klgates.com
taylor.yamahata@klgates.com

*Attorneys for Defendants*
EDWARD D. JONES & CO., L.P., and
THE JONES FINANCIAL COMPANIES,
L.L.L.P.